IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERTA SHAY )
)
v. ) NO. 1:08-0046
) JUDGE CAMPBELL
DURA AUTOMOTIVE SYSTEMS, INC. )

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 34). For the reasons stated herein, Defendant's Motion is GRANTED.

## FACTS

Plaintiff has brought this action against her former employer, alleging violations of the Fair Labor Standards Act ("FLSA"), the Age Discrimination in Employment Act ("ADEA") and the Tennessee Human Rights Act ("THRA") and also alleging a state law claim for breach of contract.

Plaintiff was employed by Defendant and its predecessors for several years. Her last position was identified as "Mass Transit Materials Planner."[1] In that position, she was paid a semi-monthly salary of $1,445.93. At the time she was promoted to Materials Planner, Plaintiff was 53 years old. Docket No. 38, ¶¶ 2-5.

Plaintiff was fired by Defendant on September 28, 2007, for poor job performance. Her former job duties were first performed by two co-workers who were more than 40 years old and then performed by Stephanie Gulley, a former Dura employee who was less than 40 years old. Docket No. 38, ¶¶ 50-52.

---

[1] Prior to her assignment as a salaried Materials Planner, Plaintiff worked a number of hourly positions, the last being quality control inspector.

Plaintiff disputes Defendant's characterization of her job as exempt from overtime pay under the FLSA. Plaintiff also disputes that the reason for her firing was poor job performance and alleges that it was, instead, because of her age. Finally, Plaintiff alleges that Defendant breached the terms of its employment handbook, which required it to follow certain procedures prior to firing her.

## SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007).

In order to defeat a summary judgment motion, the nonmoving party must provide more than a scintilla of evidence; that is, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Van Gorder*, 509 F.3d at 268. Entry of summary judgment is appropriate against a party who fails to sufficiently establish the existence of an element essential to that party's cases, and on which that party will bear the burden of proof at trial. *Id*.

## FAIR LABOR STANDARDS ACT

The FLSA requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The law, however, exempts employers from this requirement with respect to individuals "employed in a bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a)(1).

2

This exemption is to be narrowly construed against the employer, who bears the burden of proof on each element of the claimed exception. *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 399-400 (6th Cir. 2004). To prove that an employee is "employed in a bona fide administrative capacity," an employer must show that (1) the employee is compensated on a salary or fee basis at a rate of not less than $455 per week; (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200.[2]

In order to be "directly related to management or general business operations," the employee must perform work directly related to assisting with the running or servicing of the business, as distinguished from working on a manufacturing production line, for example, or selling a product in a retail or service establishment. 29 C.F.R. § 541.201(a). Work directly related to management or general business operations includes work in functional areas such as purchasing and procurement. 29 C.F.R. § 541.201(b).

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed. 29 C.F.R. § 541.202(a). The exercise of discretion and independent judgment must be more than the use of skill in applying well-established

---

[2] The regulations promulgated pursuant to an express delegation of legislative authority, are to be given controlling weight unless found to be arbitrary, capricious, or contrary to the statute. *Nielsen v. Devry, Inc.*, 302 F.Supp.2d 747, 753 (W.D. Mich. 2003).

techniques, procedures or specific standards described in manuals or other sources. 29 C.F.R. § 541.202(e).

The question of how an employee spends her time is a question of fact, while the question of whether her activities fall within an exemption is a question of law. *Nielsen v. Devry Inc.*, 302 F.Supp.2d 747, 752 (W.D. Mich. 2003).

There is no dispute that Plaintiff was paid on a salary basis. The basic function, under regular supervision, of Plaintiff's job was to plan and schedule the releases of purchased parts to ensure that production schedules were maintained. Plaintiff's Deposition (Docket No. 34-1), p. 91. She agreed that a fair statement of her job was, as listed in the company's job description, to plan material and to release appropriate schedules to suppliers and/or customers by reviewing and analyzing inventory profiles and giving consideration to usage, lead times, and economics. *Id*., pp. 91-92.

Plaintiff testified that she attended production meetings every morning, and her role was to answer questions about material shortages. Plaintiff's Deposition (Docket No. 34-1), pp. 22-23. In her job, she had to "keep a line of communication open" with both suppliers and people within the company. *Id*., p. 39. She agreed that she was a "gatekeeper" for parts and supplies, performing that role in order to make sure that production continued. *Id*., pp. 40-41. She testified that her job was in the office, not out in production. *Id*., p. 56. She agreed that she had the discretion to decide how she was going to do her job. *Id*., p. 58.

Plaintiff stated that as far as her day-to-day work, the majority of how to organize, plan and do her job was her decision. *Id*., p. 99. She agreed that her job was basically problem solving. *Id*., pp. 103-04. She testified that she had people coming to her during the day with different problems

4

that she felt she had to address and, therefore, it was hard to focus on one thing because she was constantly being interrupted by someone needing help. *Id*., p. 133. She had to react to scheduling changes and "work on the fly to some extent." *Id*., pp. 95-96. She testified that her supervisor instructed her to find a way to overcome certain obstacles and fix a problem by working with the suppliers, and she and another employee made changes with a few suppliers in order to make things better. *Id*., p. 113. As part of her job, Plaintiff also worked on ways to cut freight costs by, for example, requesting that a supplier fill a truck up before sending it to Defendant's plant. *Id*., pp. 114-15.

Plaintiff testified that she had nothing to do with purchase orders (*Id*., p. 93) and did not find sources for parts. *Id*., pp. 96-97. Although she had the discretion to decide how many she would order of a particular part, she did not have the authority to negotiate prices. *Id*., p. 53. No one reported to Plaintiff. *Id*., p. 58. She had no authority to write a disciplinary action against another employee. *Id*., p. 162.

Plaintiff argues that she was not involved in the general management of the Dura plant but, rather, was involved in the operation of a single production line. The fact that many employees perform identical work or work of the same relative importance, however, does not mean that the work of each employee does not involve the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.202(d).

Plaintiff argues that she was not permitted to exercise independent judgment because she was authorized only to follow the reports provided to her by the computer QAD system and the instructions of her supervisor. Yet she has admitted that she solved various problems for the company; that she used her own discretion in doing her job; and that she had to react to changes and

5

"work on the fly" to some extent. These tasks involve more than simply reading a QAD system report. She also admitted that Mr. Davis (her supervisor) left it to her to fix problems as materials planner. Plaintiff's Deposition (Docket No. 34-1), p. 85.

Defendant contends that Plaintiff's work was directly related to the management or general business operations of Dura because she was a "gatekeeper" of the materials coming into the plant and a "problem solver" to smooth out inventory and delivery issues. Defendant argues that Plaintiff worked regularly with vendors, shippers and others to get raw materials from suppliers in the plant and finished product completed to meet customer needs.

For the above reasons, the Court finds that Plaintiff was an exempt employee under the FLSA. She was compensated on a salary basis; her primary duties were the performance of office or non-manual work directly related to the general business operations of Defendant; and she exercised discretion and independent judgment with respect to matters of significance as part of her primary duties. Therefore, Defendant's Motion for Summary Judgment is granted as to Plaintiff's FLSA claim, and that claim is dismissed.

## AGE DISCRIMINATION IN EMPLOYMENT ACT

The ADEA prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions or privileges of employment because of that person's age. 29 U.S.C. § 623(a)(1). Plaintiff alleges that she was fired because of her age.

Defendant contends that Plaintiff has admitted that age was not the reason for her firing. Plaintiff did testify that she did not think the decision to terminate her employment had anything to do with her age. Plaintiff's Deposition (Docket No. 34-1), p. 144. She stated that she didn't know whether her supervisor had a bias against her because of her age. *Id.*, p. 145. She also testified that

she didn't know why Defendant fired her. *Id*. Plaintiff testified that she never heard her supervisor say anything about anyone's age or make jokes or criticisms about age. *Id*., p. 37.

Plaintiff testified that the decision to fire her might have been based on seniority, the number of years she had worked there. *Id*., p. 149. She admitted, however, that she was speculating. *Id*., p. 150. In any event, seniority is not the same as age. *See Hazen Paper Co. v. Biggins*, 113 S.Ct. 1701, 1707 (1993). It is incorrect to say that a decision based on years of service is necessarily age-based. *Id*. The Court finds that Plaintiff has admitted that the decision to terminate her employment was not based upon her age.

Alternatively, even if Plaintiff had not admitted that age was not the reason for her termination, the Court finds that she cannot establish an ADEA claim. To establish a *prima facie* claim for age discrimination under the ADEA and the THRA,[3] Plaintiff must show that (1) she was at least 40 years old at the time of the alleged discrimination, (2) she was subjected to an adverse employment action, (3) she was otherwise qualified for the position, and (4) the successful applicant or replacement was substantially younger than Plaintiff. Bush v. Dictaphone Corp., 161 F.3d 363, 368 (6th Cir. 1998).[4]

Assuming for purposes of this Motion that Plaintiff can establish a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's

---

[3] Courts construe the THRA under the framework of the federal statutes upon which it was patterned, including the ADEA. *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 651 (Tenn. Ct. App. 2001).

[4] The Court is aware that the Sixth Circuit has recently changed the burden-shifting framework if a plaintiff produces direct evidence of age discrimination, pursuant to *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343 (2009). *See Geiger v. Tower Automotive*, ___ F.3d___, 2009 WL 2836538 (6th Cir. 2009). This case does not, however, involve *direct* evidence of discrimination.

7

firing. Defendant has met that burden by showing that Plaintiff was terminated based upon her poor job performance. Therefore, the burden shifts back to Plaintiff to show that the reason articulated was a pretext for age discrimination. *Danielson v. City of Lorain*, 938 F.2d 681, 683 (6th Cir. 1991). Plaintiff may demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate Defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. Best v. Blount Memorial Hosp., 195 F.Supp. 2d 1034, 1042 (E.D. Tenn. 2001).

Plaintiff disagrees with Defendant's assessment of her job performance. Yet Plaintiff has not offered evidence that the assessment of her performance or the decision to terminate her employment were based upon her age. She stated that her supervisor never mentioned age, never joked about age, and never criticized her ability or inability to do the job based on age. Plaintiff's Deposition (Docket No. 34-1), pp. 84 and 116. Plaintiff testified that her supervisor had similar criticisms of other employees. *Id*., p. 81 ("So he was kind of an equal opportunity supervisor in the way . . ." "Yes."). She believed that her supervisor's intentions were good in attempting to help her do her job better. *Id*., p. 85.

When asked whether she thought her supervisor made up reasons to terminate her, Plaintiff stated "I don't think he made up reasons, but I think that in the evaluations that he gave, that that's the way he saw things, and he just basically told me he wouldn't accept any kind of an excuse." *Id*., p. 176. She agreed that her supervisor had very high standards and stated that she knew that he, in his mind, legitimately wanted her to meet those expectations. *Id*. In sum, she thinks that her supervisor believed her job performance was unsatisfactory and she just totally disagrees with him. *Id*., p. 182.

8

Plaintiff may dispute the factual bases for her supervisor's evaluation of her job performance, but her disagreement with his honest business judgment regarding her performance does not create sufficient evidence of pretext. Plaintiff asks the Court to second guess the business judgments by Defendant. So long as an employer has an honest belief in its proffered non-discriminatory reason, an employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 728 (6th Cir. 2008).

Plaintiff is required to show more than a dispute over the facts upon which the adverse employment decision was based. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007). She must put forth evidence that the employer did not honestly believe in the given reasons for not hiring Plaintiff. *Id*. So long as an employer has an honest belief in its proffered nondiscriminatory reason, the employee cannot establish that the reason was pretextual simply because she disagrees or even if it is ultimately shown to be incorrect. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Plaintiff has not shown that Defendant's reasons for firing her were pretextual.

Plaintiff has offered statistical evidence in attempting to show that Defendant exhibited a pattern of retaining younger employees and terminating older employees. Although appropriate statistical evidence showing an employer's pattern of conduct toward a protected group can, if unrebutted, create an inference that the employer discriminated, statistics taken in isolation are generally not probative of discrimination. *Timmerman v. U.S. Bank*, 483 F.3d 1106, 1114-15 (10th Cir. 2007). In addition, the statistics must show a significant disparity and must eliminate the most common nondiscriminatory explanations for the disparity. *Barnes v. GenCorp., Inc.*, 896 F.2d 1457,1466 (6th Cir. 1990). In other words, a plaintiff's statistical evidence must focus on

eliminating nondiscriminatory explanations for the disparity by showing disparate treatment between *comparable* individuals. *Turner v. Public Service Co. of Col.*, 563 F.3d 1136, 1147 (10th Cir. 2009).

Even accepting the statistical evidence in the light most favorable to Plaintiff, Plaintiff has failed to show that the managers[5] who were terminated had positions and performance evaluations that were comparable to the younger managers who were retained. *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 747 (10th Cir. 1991).

Above all, Plaintiff bears the ultimate burden of showing that the adverse employment action was based upon her age. Plaintiff has failed to establish that her age was the "but-for" cause of her termination. *See Gross*, 129 S.Ct. 2343 (2009). The Court finds that Plaintiff has failed to carry that burden. For all these reasons, Defendant's Motion for Summary Judgment on Plaintiff's ADEA claim is granted, and that claim is dismissed.

## BREACH OF CONTRACT

Plaintiff asserts that Defendant breached its contract with her by failing to follow certain procedures in the employment handbook, but Plaintiff has admitted that she had no contract with Defendant. Plaintiff's Deposition (Docket No. 34-1), p. 173 ("we were told that from the day we received it first-hand that this [employment handbook] was not a contract."). The employment handbook was not a contract.

With no employment contract, Plaintiff's employment with Defendant was "at will." *Rose v. Tipton County Public Works Dept.*, 953 S.W.2d 690, 691-92 (Tenn. Ct. App. 1997). Thus, her employment with Defendant could be terminated by either party at any time without cause, subject to employment discrimination laws. *Id.*

---

[5] Plaintiff characterizes herself as a manager for these purposes.

10

There being no contract, Plaintiff cannot establish a breach of contract claim. Defendant's Motion for Summary Judgment on the breach of contract claim is granted, and that claim is dismissed.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment is GRANTED, and this action is DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE